I think you're going to have to pronounce your name for me. I apologize, but you may proceed and please introduce yourself and tell us how to pronounce your name. Thank you, Your Honor, may it please the court. My name is I'm sorry, I can't hear you. Okay. Hear me now. Yeah. Yeah. Okay. Sorry about that. My name is Forrest Tata Nipa, that's how you pronounce it is Tata Nipa. I represent the appellants who are the plaintiffs below. And they're the appellants are the special administrators of the estate of Jonathan tubby. Our appeal today is basically about fidelity to the summary judgment standard. As you know, under that standard, all the facts must be viewed in the light most favorable to the plaintiffs and summary judgment should be granted sparingly in excessive force cases like this. Our case is about Jonathan tubby. He was a 26 year old man who was arrested for a non violent crime, he had no violent criminal history, he was searched, he was handcuffed, he was taken into custody. He was brought to the county jail, and then he was shot five times in the back, and the back of the head, while he was face down on the ground under attack by a police canine, and he was shot by the same officer that supervised his search in the first place. These facts establish several constitutional violations. First is the shooting itself, which was part of a pattern of unconstitutional force by the Green Bay Police Department. The failure to second is a failure to intervene by other officers that were on the scene. Third is the failure to train those officers to intervene by Brown County. And fourth is this danger created by Brown County, when it forced tubby out of a lot car as he pleaded for help without giving him any instructions on how to properly surrender. However, interrupted you're outlining the claims that you're pursuing in the case. In order to get the proper framework for analysis the first case you mentioned is a is a pattern of practice claim I did not understand it to be a pattern or practice Monell type claim except perhaps secondarily it's it's really a claim against the officer. It's Fourth Amendment claim, as I understand it against the officer who fired the shots that killed tubby. That's correct. There was evidence of a pattern of practice and that was something that we pursued on summary judgment. The district court dismissed the Monell claim just because the district court also dismissed the claim against O'Brien. So, when you reverse the claim against O'Brien you should also reverse the dismissal of the Monell claim. I didn't see anything of an evidentiary nature or very much argument about a pattern of practice in the Green Bay Police Department. That was the moving force cause of this shooting. There was there was a lot of argument and evidence that was presented below but since the district court didn't dwell on those elements it only dismissed the Monell claim because it dismissed the claim against O'Brien. We just address that in our brief. Green Bay, as I said we abandoned that claim we didn't. That's the page of case talks about how you know the district court doesn't dwell on the elements, the appellant doesn't need to either. And Green Bay didn't develop the reason there wasn't any, we did in our reply, put in a footnote, a couple citations to some of the evidence I mean there was a lot of evidence about how there was a basically a culture of dishonesty at the Green Bay Police Department where you could use force against an unarmed person, lie about it and get off with no discipline or maybe a slap on the wrist. The culture was so bad that there was even an officer that tattooed himself every time that he killed a civilian and that tattoo signified killing of an enemy. But I would like to talk about the shooting itself because I think that is the primary claim and that's where I want to spend a lot of our time today. As explained in the briefs. There's a lot of factual disputes, and I don't want to retread them because they are all in the briefs but I just want to give some context and backgrounds for how some of these arguments developed. As the court knows, there's a video of Jonathan tubby falling to the ground. Shortly before the shooting. And that video is significant for two reasons. First it shows his empty right hand extending out above his head. And this creates a fact issue about the reasonableness of force, because there's also evidence that his left empty left hand was visible for the entire time, basically, that he was visible by police officers after they broke out the window the squad car that his left hand was visible. And then when his right hand becomes visible that creates a factual issue of whether a reasonable officer on the scene should have known that he was an arm should have seen that both of his hands were empty. Second, when you combine the video with the testimony of the other officers and you combine it with the physical evidence, we know that he was face down on the ground, and under attack by police canine creating a factual issue of whether he was subdued. The arguments below for you know 95% of the life of this case, the defendants never were able to argue against this video, come up with a way to explain it away. Instead, they just ignored it. And they just asked the district court to basically credit O'Brien's testimony that he shot tubby before he fell. But the problem of course was that that version of events has been disproven. When tubby had an autopsy he had premortem injuries to his face that were consistent with falling to his face, and the bullets struck him in the top of the head here in the back of the head and out of the back of his neck, and in his back on his shoulder area here so obviously hitting him from a downward direction. And then of course we have the testimony of other officers that places the timing of the shots after he fell and we know he fell because he was being attacked by police canine so there's obviously a factual issue of whether he was subdued. The district court dismissed the claims anyways, it didn't have any arguments or reason why you know to get around the video so it just went on its own fact finding mission to find its own evidence. It went on YouTube to find a video that involves a different police officer, a different suspect a different state a different time a different place the video just right. Let's set that aside and focus on what the videos do and do not show because that's really the crux of this case, when you're referring to the video that shows both of his hands visible and that he was on the ground, are you referring to the video I assume you're referring to the video that was taken from the vantage point outside the Sally port entrance entrance. Because that doesn't show much at all. It doesn't show much at all because what let's second. I mean the whole time frame from Mr tubbies exit from the car through the broken out back window back windshield, and the shooting is 10 seconds, and he's moving during much of that. And what is shown on the videos that got a better vantage point is that he still had his right hand can feel under his shirt. The video is obviously not the best quality but it is from a very similar vantage point that O'Brien had and it does show his hand, and there's other officers that testified that that will you know they agreed that's the video shows the hand the district court agrees that it shows him falling and it shows his right hand. It doesn't show his left hand but because we do have those other videos and because we do have the testimony of other officers we know that his left hand was visible at basically the same time, moments before split seconds before he fell. So as he falls his right hand pops out. And even though that's just one second, as a district court noted, it just takes one second to fire a gun and the second that you see that hand come out. You shouldn't fire. And the second that you see him being fallen to the ground under attack and being pulled backwards by a police canine, you know he's subdued a reasonable officer should know that he's subdued, and at a very minimum, the jury should make the determination of, you know, how long is a second how long is 10 seconds 10 seconds seems very quick in an oral argument like this 10 seconds is a long time to go and hold your breath and 10 seconds is a long time to have to deliberate about whether to fire a gun. That's not fitting the facts within the framework of the legal standard the legal standard is what a reasonable officer would do in this split second situation, not what could be argued in hindsight based on a freeze frame analysis of all three videos and hindsight. So that you can't make that argument to the jury. And if you did, there would be an objection and that objection would be sustained because that's not proper legal standard. Well, I respectfully disagree I think the jury would be able to look at the video and could reasonably infer that other officers would have seen his empty hands, especially because there were many many officers there was over a dozen officers on the scene, and none of them heard by transforming that subjective testimony into the standard when it should be an objective standard as the court noted, and every other officer said that that popped it sounded like what it was a bean bag gun. So, when you look at the, what a reasonable officer on the scene in those split seconds would have done. There's certainly ample evidence to say that they wouldn't have fired because none of them did. We have the video that does show the hand. And there's all the other factual disputes leading up to the, to the shooting. It's really about which version of the facts that you want to accept, and the, especially in the context of the circuits case law that about how sparingly summary judgment should be granted in this type of case, the jury should really be making the factual findings. Council, Council, would you speak for a moment to the issue of qualified immunity. Yes, you know this isn't a qualified immunity type of case. Again, if you accept the version of our facts there's an unarmed man laying on the ground that was shot in the back of the head. That's clearly unconstitutional. So it's not the type of case where it's about a particular or strange or, you know, a taser or something where the law is developing or the laws unclear. It's really just about what version of the facts that the jury wants to accept. I want to spend a couple of minutes quickly on the state created danger claim. The district court. Time is short on that claim that's just, that's just a due process claim right. That is the due process claim yes data danger doctrine doesn't have anything to do with this case. Well, three of due process claim against the state actor. Yeah, I mean, the state created danger claim as I understand it is a is a subspecies of a due process violation. So, that's how we proceeded and how we styled it, but yeah I mean it is a due process claim. And the district court held that it doesn't apply, there should be some sort of exception, because it involved a state actor. That's inconsistent with this, the prior case law in this court. It's really just a due process claim the state created danger exception that doctrine is an exception to the principle that private harms, the state has no duty and state actors have no duty to protect persons against privately inflicted harms, we don't have any privately inflicted harm that's alleged in this case what we have is a lot of police officers who are defendants. And so you're making a due process claim as I understand it. A shot to the conscience substantive due process claim against officers eagle, and his, and his employer, Lieutenant's eagle and he's, he's a county sheriff's lieutenant right, he is. And I just like to reserve the rest of my time for rebuttal here, so I want to be able to address some of the other arguments but that's right I mean it is a due process claim, there is no exception that applies. So I will reserve the final two minutes that I have for rebuttal. Thank you. Thank you. May it please the court. My name is Jasmine Baynard and I represent the defendant appellees the city of Green Bay officer O'Brien and Andrew Smith. Police officers are tasked with making split second decisions to use deadly force in dynamic rapidly evolving and dangerous situations. For these reasons courts have consistently warned about second guessing those decisions, with the benefit of hindsight, which is exactly what plaintiffs asked the court to do here. This case arises out of one of those split second decisions in extremely dangerous situation that was anticipated by the Supreme Court in Granby Connor, its progeny. And as the court noted previously, this standard is deferential to the judgment of police officers, it's an objective standard here plaintiffs must demonstrate that officer O'Brien's use of deadly force against Mr. Chubby was objectively unreasonable in light of the facts and circumstances, facing officer O'Brien in the Sally port on October 19 2018. Now, in addition to the deference officer O'Brien receives on the underlying constitutional claim qualified immunity applies, even if his mistaken belief about the use of force was reasonable under the circumstances. Now, plaintiffs have argued that this is a case about what facts the jury wants to believe and what inferences a jury could draw. Well, on summary judgment, the court isn't required to draw inferences that are not demonstrated by the factual record. So I want to talk about the circumstances specifically about what the video does, and what the video does not show. So it's undisputed that when Chubby arrives in the Sally port he refuses to exit the squad car. It's undisputed that when officer O'Brien opens the door and attempts to remove Chubby, he immediately becomes concerned. Chubby's hands are no longer handcuffed behind his back. Instead, they're under his shirt holding what officer O'Brien described to be as the cylindrical barrel of a gun. The belief that Chubby is concealing a gun under his shirt is consistent with the video evidence referenced on page five and seven of our brief. Chubby then says, and I quote, I'll fucking do it. Now officer O'Brien slams the door, he retreats to a position of cover, and he alerts jail staff that Chubby's armed. And that's when officer Wernicke says, I must have missed something during the search. Under those circumstances, it was objectively reasonable for officer O'Brien to believe that Chubby was armed with a gun and would use it. So over the next 35 minutes backup arrives. There's a standoff in the Sally port, during which officers repeatedly plead with Chubby to show his hands. They say, Jonathan, Bud, put your hands up so we can see them. Please, please show us your hands. We don't want to hurt you. But Chubby does not show both of his hands. And these facts are demonstrated by the undisputed video evidence, no matter how inconvenient they are for plaintiffs. We can't ignore them or draw inferences when they're contradicted by video evidence. And so given our time limitations, I want to focus on the 10 seconds between Chubby exiting the squad and officer O'Brien shooting. Now, during those 10 seconds, Chubby erupts from the rear squad window, and he stands on the trunk of the car facing officers. And we know at this time that both of his hands are not visible and they're not clear because we have it on camera. And still frames from this moment are referenced on page nine of our opposition brief. Moreover, officers on scene testified to the same. Specifically, Sergeant Denny, who was watching Chubby's hands, and when he did not see both hands clear, fired a bean bag round at him. So after being struck by the bean bag round, Chubby falls off the trunk of the vehicle onto the ground, but he quickly rose to his feet and began rushing towards the Sally port door. He's engaged by a canine. But even with those lesser uses of force, Chubby was not subdued. In fact, he was able to rush towards officers standing in the Sally port entrance, while his right hand was still concealed under his shirt. And the fact that Chubby was not subdued at any time prior to the shooting is made even more obvious by the fact that he was able to make it from the rear window of squad 42 to the Sally port entrance in 10 seconds. This is demonstrated on the diagram on page 11 of our brief. So as Chubby rushes towards the Sally port door, Officer O'Brien believes he's armed. And plaintiff's reply brief refers to the phrase, actions speak louder than words. And I think that's true here. Actions do speak louder than words. And here, the actions of Officer O'Brien and the rest of the officers on scene demonstrate that they believe Chubby was a threat. Notably, video evidence that we have that plaintiffs had in hand and rely on heavily shows officers stepping back to avoid being shot, drawing their firearms, and Officer Wernicke jumped over a retention wall for cover. Now in the split second before Officer O'Brien shot, he heard the pop of a bean bag round, he saw Chubby's hands pointed towards officers, and he believed that Chubby fired the gun that was concealed under her shirt, and he feared that Chubby would continue to shoot. As a result, Officer O'Brien shot Mr. Chubby. And we know now that Chubby was unarmed, which makes this incident even more tragic, and 10 minutes is not enough to talk about how tragic Jonathan Chubby's death was. However, even if Officer O'Brien was ultimately mistaken in his belief that Chubby was armed, that does not render his belief unreasonable, nor does it preclude his entitlement to qualified immunity. Indeed, in Sherrard v. Berry, this court held that evidence that a suspect was unarmed is irrelevant to the question of whether the officer's decision to use deadly force was reasonable. The issue in such a case as here is whether the officer reasonably believed the suspect was armed based off the information available to him at the time he fired the fatal shot. Your Honors, the judgment of the district court should be affirmed because the undisputed facts taken as a whole, without the benefit of hindsight, show that Officer O'Brien reasonably believed that Chubby was armed, and he reasonably believed that he posed an immediate threat. And therefore, Officer O'Brien's response to that threat was objectively reasonable under the circumstances. Your Honor, I am not relying on that video at all, and I don't think the lower court impermissibly relied on that YouTube video either. Although that video does demonstrate, provides a very good example of a situation where somebody can have a concealed weapon and pose a deadly threat almost immediately, the district court used that as secondarily as maybe support, but did not use that video impermissibly because the court did not contradict evidence in the record or use it as a basis for deciding that Mr. Chubby presented a threat. But it's generally not appropriate to go outside the record for that sort of material. I would agree with you, yes. Officer O'Brien's response to the threat was objectively reasonable under the circumstances. Moreover, the combined effects of qualified immunity standard and the substantive Fourth Amendment standard protects Officer O'Brien, even if his mistake was reasonable. Finally, plaintiff's municipal liability claim must also fail. As argued in our briefs, plaintiffs waived any Monell claim by failing to develop the argument in their moving brief. But even if they had, the claim must fail because Officer O'Brien did not violate Chubby's constitutional rights. And I also want to address a few, with my remaining time, misrepresentations of the record. You know, counsel has argued that there was a widespread practice of dishonesty among the Green Bay Police Department. As noted by the court, there's absolutely no evidentiary support for that. That's all I have, Your Honor. All right, thank you very much. Mr. Sparks. Good morning, Your Honors, and may it please the court. My name is Ben Sparks, and I have the distinct privilege of representing Brown County Sheriff Todd DeWayne, Captain Heidi Michael, Lieutenant Thomas Ziegle, and Deputies Melezova and Winstor for today. The estate has not cited to any case from this circuit or beyond that recognizes the viability of a substantive due process claim brought under the narrow state-created danger exception to the Ducheney Rule, where the direct source of alleged harm was a law enforcement officer's use of force in the line of duty. This court has expressly stated that state-created danger is not a doctrine prohibiting primary conduct in Weiland v. Loomis, 938 F. 3rd at 919, but instead a narrow exception to the rule announced in Ducheney. Last year, in the estate of La Porta v. City of Chicago, 988 F. 3rd at 989, the court recited the rule from Ducheney in straightforward terms. Quote, repeatedly applied Ducheney's holding that the state has no due process duty to prevent harm from private actors unless one of the limited exceptions applies. Mr. Clark, I think we've had a concession from your opposing counsel that this is not a state-created danger claim. I haven't heard him in response to the questions I asked. I thought it was conceded that this is just a straight-up, shock to conscience, substantive due process claim against state actors. Understood. Thank you, Your Honor. And we'll accept that concession, obviously. I'll note for the record, though, Your Honor, that that has been the framework that has been alleged in this case throughout the duration of the briefing. And so that's the only reason that I framed my argument that way. You had to respond to the arguments that were developed. Sure. But, Your Honor, even assuming for the sake of argument that there has been a viable substantive due process claim alleged against Lieutenant Zegel, that claim nonetheless fails as a matter of law. And that's because Lieutenant Zegel's comment was not conscious shocking, which is the standard that must be shown. The undisputed facts show that Lieutenant Zegel's decision-making on October 19, 2018 were guided by his extensive tactical training through the Brown County Sheriff's Office and the National Tactical Officers Association. While the tactics of breaking out the back window of the squad vehicle and introducing OC spray may be easy to question in hindsight and from the comfort of all of our offices, Lieutenant Zegel testified about how he believed his plan aligned with the NTOA's decision continuum on dealing with barricaded subjects. There's simply no evidence to support a claim that Lieutenant Zegel acted with, quote, mens rea approaching that of criminal recklessness, end quote. And that's from Nelson v. City of Chicago in 992 F. 3rd at 604. The shots to the conscience standard requires that high bar to be met. There's no evidence in this case that Lieutenant Zegel went outside of his training or acted in bad faith. And even to the extent that he may have made a mistake, he's entitled to qualified immunity. In fact, qualified immunity is designed to protect officers like Lieutenant Zegel for reasonable mistakes they make in evaluating and responding to unprecedented dynamic situations like the one in this case, where officer safety becomes paramount. More importantly, though, Mr. Tubby's substantive due process rights were not clearly established in October 2018 under the facts of this case. The lack of any controlling case or robust collection of persuasive authority, showing that Mr. Tubby's substantive due process rights were at issue in relation to law enforcement officers on scene when an officer from another agency used deadly force, is telling and is exemplary for the qualified immunity application in this case. And the same is true with Deputies Melezova and Winstorfer when it comes to the failure to intervene claim against them. Both of those officers feared for their own lives at the moment Officer O'Brien used deadly force. They have no more than 10 seconds to understand and process what was happening. And both Mr. Tubby and Officer O'Brien were moving at the moment deadly force was used. Making intervention or any plausible intervention or feasible intervention, not only unreasonable, but perhaps unsafe under these circumstances. So those deputies are also entitled to qualified immunity. And so in closing, on behalf of my clients, I thank the court for its time and consideration. And I respectfully ask that the court affirm the District Court's decision granting summary judgment and dismissing this action. And thank you, Your Honors. Thank you very much. Mr. Tonenegro. Thank you. We heard a lot from the defendants about hindsight. The plaintiffs aren't engaging in any hindsight. If anyone's engaging in hindsight, it's the defendants. They say now that O'Brien saw a cylindrical barrel. But what did he say at the night of the shooting? He said he saw something and that was it. Something. Not a barrel, not a gun. They say now that Tubby was rushing towards officers. But what was the testimony? The testimony that he was stumbling blindly around the sally port. They're not engaging in any hindsight. The defendants are the ones engaging in hindsight to justify the shooting. And it's not hindsight to look at two videos from two different angles that are very close in time proximity and try to reconstruct the events of the night and say, OK, in one video, we see an empty left hand. In one video, we see the empty right hand. Therefore, it was unconstitutional to shoot him. And we still have not heard any argument that can overcome that fact that you can see both hands in videos that are very close time and proximity. And it's reasonable to infer that a reasonable officer on the scene would not have shot. And in fact, none of the other officers did shoot. Regardless of how this claims against Zegel were styled, there absolutely is a claim against him because his conduct does shock the conscience. He was deliberately indifferent. Every single training, every policy on the book said to use a SWAT team, use crisis negotiators. And he gave Jonathan Tubby a death sentence. He was pleading for help. And instead of telling him how to surrender and get the help he needed, he had someone blast him in the face with O.C. spray and he was forced out of the vehicle. And at that point, anything he did would have been perceived as a threat. He was surrounded by police officers and he had no instructions on how to surrender. So any movement he made in any direction would have been charging towards officers. Any way he moved his hands would have been pointed at officers. He had no instructions how to surrender. That's a death sentence. He was forcing someone to flee a cell. He was in custody and then shooting them in the head. And the shock to conscience standard here is deliberate indifference. I don't know why there's been any argument or discussion of that. The King case is pretty clear on that point. So I thank the court for its attention today. All right. Thank you very much. Thanks to our counsel. We'll take the case under advisement.